***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Stonewood Insurance Company is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained a compensable injury to his left knee and ankle on May 5, 2008, arising out of and in the course of his employment.
5. Defendants have accepted this claim on a Form 60, which is dated August 8, 2008.
6. Plaintiff's average weekly wage is $1,037.82, resulting in a weekly compensation rate of $691.91.
 *********** EXHIBITS
The following exhibits were admitted into evidence before the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Industrial Commission Forms
 (c) Stipulated Exhibit 3: Plaintiff's Medical Records
 (d) Stipulated Exhibit 4: Job Search Reports
 (e) Stipulated Exhibit 5: Medical Rehabilitation Records
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Baddour's April 1, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether plaintiff's left knee arthritis is causally related to his accident at work on May 5, 2008? *Page 3 
2. Whether plaintiff's depression and anxiety is causally related to his accident at work on May 5, 2008?
3. Whether plaintiff's ongoing disability is due to his admittedly compensable accident at work on May 5, 2008?
 ***********
Based upon the preponderance of all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-five (45) years old on the date of hearing before the Deputy Commissioner. He has a high school diploma and a number of certifications, including Electronics/Industrial Electronics, Welding, HVAC, and Refrigeration.
2. Plaintiff had been variously employed as a machine mechanic and welder until he began working as a HVAC technician. Plaintiff worked as a HVAC service technician for various employers from 1991 to June of 2005 when he began working for defendant-employer as a HVAC service technician.
3. As a HVAC technician for defendant-employer, plaintiff installed and serviced commercial and residential heating and air systems. This job required plaintiff to crawl, bend, kneel, stoop, and climb ladders on a regular basis. He was also required to push and pull and carry heavy equipment. Plaintiff was required to lift up to 100 lbs.
4. On the date of injury, May 5, 2008, plaintiff was on a service call when he stepped in a rut in some mulch and twisted his ankle, causing him to fall down and roll to the bottom of the hill. Plaintiff felt pain in his left ankle and knee. He reported the incident and went to *Page 4 
Concentra Medical the next day. Plaintiff's claim was accepted on a Form 60 for "Left ankle sprain. Left knee strain with meniscal tear."
5. Plaintiff's ankle healed quickly but he continued to have pain in his left knee. Plaintiff was initially treated conservatively at Concentra Medical Center, but was eventually referred to Dr. Roy A Majors, an orthopedic surgeon at OrthoCarolina in Charlotte, North Carolina.
6. Plaintiff saw Dr. Majors on June 16, 2008, and was ultimately diagnosed with having a left medial meniscal tear and arthritis of the left patellofemoral joint, which is arthritis under the knee cap.
7. Plaintiff underwent left knee arthroscopic surgery by Dr. Majors on July 24, 2008, to repair the meniscal tear.
8. Dr. Majors referred plaintiff to physical therapy on July 25, 2008. Plaintiff's first physical therapy note from OrthoCarolina dated July 28, 2008, indicates that plaintiff had a moderate amount of edema, or swelling, in the left knee. The physical therapist continued to note that plaintiff is having difficulty with swelling and pain in his left knee throughout his treatment course from July 28 through October 15, 2008.
9. Plaintiff returned to see Dr. Majors on October 6, 2008. He noted that plaintiff continued "to struggle" with his left knee including feeling weak. Plaintiff returned to see Dr. Majors on October 31, 2008, after a course of work conditioning. It is noted that he had had a flare-up of pain and that his knee was swollen to the point that Dr. Majors aspirated 30 cc of fluid from his knee. On November 21, 2008, Dr. Majors again aspirated plaintiff's knee.
10. On January 5, 2009, Dr. Majors found plaintiff to be at maximum medical improvement from his work injury and assigned a fifteen percent (15%) impairment rating to his *Page 5 
left knee. He limited plaintiff from repetitive bending, stooping, squatting, and ladders and felt plaintiff would be a candidate for vocational rehabilitation versus returning to his prior employment as a HVAC technician.
11. Plaintiff returned to see Dr. Majors on March 9, 2009, with complaints of continuing pain and swelling. Eventually, Dr. Majors recommended Supartz injections for the continued pain and swelling and a series of five injections were performed. Plaintiff was last seen by Dr. Majors on December 21, 2009, wherein Dr. Majors had no further recommendations for treatment.
12. On June 30, 2009, plaintiff sought a second opinion on his own with Dr. H. Clayton Thomason, an orthopedic surgeon at Carolina Orthopaedic Sports Medicine Center in Gastonia, North Carolina. Dr. Thomason's opinion was that plaintiff suffered a meniscal tear and aggravated his underlying arthritis. Dr. Thomason recommended an MRI. Following the MRI, it was Dr. Thomason's impression that plaintiff had advanced arthritis in his left knee including medial disease and patellar femoral disease. Dr. Thomason opined that the only treatment likely to improve plaintiff's pain for the long term would be a knee replacement.
13. On June 17, 2010, plaintiff sought another opinion on his own with Dr. David Homesley, an orthopedic surgeon with Barron Homesley Orthopedic Specialists in Charlotte, North Carolina. It was Dr. Homesley's opinion that plaintiff suffered from moderate to extensive degenerative changes with the greatest changes in the medial patellar femoral compartments of his left knee. His impression was left knee pain and traumatic arthritis. It was Dr. Homesley's opinion that all conservative medical treatment had been exhausted and that the only other option for treatment was knee replacement surgery. *Page 6 
14. Plaintiff has been undergoing vocational rehabilitation efforts with a consultant, Ms. Becky Werts, who was provided by the defendant-carrier. Plaintiff has also been taking property management classes at York Technical College, which also is being provided by the defendant-carrier.
15. The parties presented the medical opinion testimony of four providers, Dr. Majors, Dr. Thomason, Dr. Homesley, and Dr. Shah. All of the medical experts offering an opinion agree that plaintiff's arthritis condition is not due to the medial meniscus tear that defendants accepted as compensable. However, the medical experts disagree on whether plaintiff suffers from traumatic arthritis (or traumatic aggravation of pre-existing arthritis) versus degenerative arthritis due to wear and tear that is unrelated to the traumatic event of May 5, 2008.
16. Dr. Majors testified that plaintiff has "arthritis under the kneecap that preexisted the meniscal injury." Dr. Majors further testified that plaintiff's arthritis was not caused by his accident at work. Dr. Majors based his opinion on his observations during surgery. Specifically, Dr. Majors testified:
 "I did not see a pattern of an acute traumatic injury underneath the kneecap . . . It was more of a wear pattern very similar to if you look at a set of tires and their thinning and they're wearing versus a tire that's run over something that's got a gash . . . It's a visual inspection, looking at sharp, cut edges, gashes, cracks versus a wear and breaking down."
17. When asked if plaintiff could have aggravated his preexisting degenerative knee condition, Dr. Majors replied: "He could have but not to the point where I think it would have been a permanent aggravation." Dr. Majors went on to further state, "I do, however, feel he has some of permanent disability/impairment from his work injury and I do feel he has permanent *Page 7 
restrictions from his work injury. And so I'm not saying that he should be totally asymptomatic from his work injury."
18. Dr. Thomason saw plaintiff two times, the first in June 2009, over a year after the injury of May 5, 2008. Dr. Thomason acknowledged that Dr. Majors was the treating physician and that Dr. Majors had given "excellent care" to plaintiff. Dr. Thomason testified regarding the May 5, 2008 incident, "I think to a reasonable degree of medical certainty that incident at the very least aggravated his condition and caused some of the arthritic changes that he's now suffering from." Dr. Thomason further opines that the May 5, 2008 incident more likely than not aggravated any preexisting degenerative arthritis. Dr. Thomason's opinion is that since the other treatments have failed, the last remaining treatment option for plaintiff is a left knee replacement. Dr. Thomason based his opinion on his two examinations of plaintiff, his review of the MRIs, and the fact that plaintiff reported that he was asymptomatic before the injury and then became symptomatic after the injury.
19. Dr. Homesley only saw plaintiff once, on June 15, 2010, over two years after the date of the injury. Dr. Homesley acknowledged that Dr. Majors had much more contact with plaintiff since he began seeing plaintiff shortly after the accident, performed the surgery on plaintiff's knee, and treated plaintiff for a period of over one year. Dr. Homesley testified it is his opinion that the fall "caused the arthritis in the medial compartment, and actually progressed arthritis in patellofemoral compartment." Dr. Homesley testified that, unless there were before and after injury MRIs, the only way to tell whether someone had degenerative arthritis versus traumatic arthritis would be based on patient history of having no problems before and then having problems after. When asked if "one of the basic fundamental reasons for your opinion that [the arthritis is] related to that fall, is the fact that [plaintiff] didn't have pain before and then he *Page 8 
did after," Dr. Homesley replied, "It's the main one, yes." Dr. Homesley opined to a reasonable degree of medical certainty that a knee replacement would be appropriate treatment for plaintiff.
20. The Full Commission assigns greater weight to the causation opinions of Dr. Thomason and Dr. Homesley than to the opinion of Dr. Majors. Drs. Thomason and Homesley both agree in their opinions that plaintiff's current condition in his left knee was caused or aggravated by the May 5, 2008 injury and that the appropriate treatment for that condition is a knee replacement. Although Dr. Majors' opinion is in contradiction to both causation opinions expressed by Drs. Thomason and Homesley, Dr. Majors did state that he did not expect plaintiff to be asymptomatic from his workplace injury.
21. Dr. Shah is a board certified internist at Palmetto Medical Group, where he first treated plaintiff on October 15, 2009, for mild depression and anxiety. At that time, plaintiff was already being treated at the practice for these conditions. With regard to cause of plaintiff's psychological condition, Dr. Shah opined that plaintiff's loss of his job and productivity, due to his work injury, were the primary contributors to his current depression and anxiety. Dr. Shah further testified that plaintiff's psychological condition should improve if he returns to work.
22. Based upon the uncontroverted testimony of Dr. Shah, the Full Commission finds that plaintiff's depression and anxiety are causally related to his accident at work.
23. With regard to disability, Dr. Majors assigned plaintiff permanent restrictions on repetitive bending, stooping, squatting, and climbing ladders that have prevented him from returning to work as a HVAC service technician.
24. Dr. Majors further elaborated that the restrictions he assigned to plaintiff are for his work related injury only, and not for his arthritis, or some combination of both conditions. Specifically, Dr. Majors testified: *Page 9 
 "I know we want to try to separate the two, but the key is that I feel his patellofemoral arthrosis problem was pre-existing. It may still give him problems down the road. It's his work injury why we restricted him. It's his work injury why I feel those are the limitations we do and not further limitations because he's not doing further harm to his knee."
25. Plaintiff has participated in vocational rehabilitation provided by defendants since December 12, 2008. Based upon the preponderance of the evidence of record, the Full Commission finds that plaintiff has engaged in a reasonable job search. Despite his reasonable job search efforts, plaintiff has been unsuccessful in finding suitable employment within the restrictions assigned by Dr. Majors.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 5, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer involving his left knee. N.C. Gen. Stat. § 97-2(6).
2. Given the filing of their Industrial Commission Form 60 and the fact that the current condition at issue affects the same body part listed on that form, the Parsons' presumption applies in this matter, thereby making it defendants' burden to prove that the aggravation of plaintiff's left knee degenerative arthritis condition and need for a total knee replacement are not causally related to his May 5, 2008 injury by accident. Perez v. AmericanAirlines/AMR Corp., 174 N.C. App. 128, 620 S.E.2d 288 (2005),disc. rev. improvidently allowed,360 N.C. 587, 634 S.E.2d 887 (2006); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). *Page 10 
Based upon the preponderance of the evidence of record, defendants have failed to meet this burden. Perez v. American Airlines/AMRCorp., supra; Parsons v. Pantry, Inc., supra.
3. Regardless of the burden of proof, as the direct and natural result of and causally related to his May 5, 2008 admittedly compensable injury by accident, plaintiff's pre-existing, non-disabling degenerative left knee arthritis was materially aggravated for the worse to the extent that a knee replacement procedure is required. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
4. Based upon the preponderance of the medical testimony of Dr. Shah, plaintiff's depression and anxiety developed as a natural and direct result of his compensable injury and are related to his compensable injury of May 5, 2008. Plaintiff has met his burden to show that his depression and anxiety in this case are related to his compensable injury. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980).
5. Defendants admitted the compensability of plaintiff's injury by accident on May 5, 2008, by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff.Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001).
6. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co., *Page 11 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations.Demery v. Perdue Farms., Inc., supra.
7. In the instant case, plaintiff met his initial burden to show that he is disabled. Based upon the preponderance of the evidence, plaintiff has shown that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment. Russell v. Lowes Product Distribution,supra.
8. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental, and vocational limitations. Demery v. Perdue Farms, Inc., supra.
9. As the result of his admittedly compensable May 5, 2008 injury by accident, plaintiff was temporarily totally disabled and is entitled to be paid by defendants temporary total disability compensation at his weekly compensation rate of $691.91 for the period of May 6, 2008, through the present and continuing until such time as he returns to suitable employment or *Page 12 
further Order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
10. As the result of his admittedly compensable May 5, 2008 injury by accident, his materially aggravated left knee arthritis, need for a total knee replacement, as well as his depression and anxiety, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated for a left knee replacement. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendants shall pay plaintiff temporary total disability benefits at the weekly compensation rate of $691.91 for the period of May 6, 2008, through the present and continuing until such time as he returns to suitable employment or further Order of the Commission.
2. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth (4th) compensation check due plaintiff.
3. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his admittedly compensable May 5, 2008 injury by accident, his materially aggravated left knee arthritis, need for a total knee replacement, as well as his depression and *Page 13 
anxiety, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
4. Dr. David Homesley is hereby authorized as plaintiff's treating physician for his left knee arthritis condition and defendants shall pay for treatment authorized by Dr. Homesley including, but not limited to, a left knee replacement, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
5. Dr. Amit Shah is hereby authorized as plaintiff's treating physician for his depression and anxiety and defendants shall pay for treatment authorized by Dr. Shah, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
6. Defendants shall pay the costs.
This the 22nd day of September, 2011.
 S/_____________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING A WITHOUT WRITTEN OPINION:
 S/_____________________ STACI T. MEYER COMMISSIONER *Page 1